**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
KWAME JOHNSON,                      :
                                    :  Civil Action No. 08-1357 (MLC)
              Plaintiff,            :
                                    :
         v.                         :  OPINION
                                    :
CITY OF ASBURY PARK, et al.,        :
                                    :
              Defendants.           :
_____:
```

**APPEARANCES:**

KWAME JOHNSON, Plaintiff pro se, #560653
South Woods State Prison, Bridgeton, New Jersey

**COOPER**, District Judge

Plaintiff, Kwame Johnson, who is confined at South Woods State Prison, seeks to bring this action in forma pauperis under 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant the application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and file the Complaint. However, for the reasons set forth below, the Court concludes that the Complaint should proceed in part only.

## I. BACKGROUND

Johnson brings this action against: the City of Asbury Park (as to the Asbury Park Police Department); Detective Robert Ash of the Asbury Park Police Department; the State of New Jersey; New Jersey Superior Court, Monmouth County; Monmouth County (as to

Monmouth County Correctional Institution ("MCCI")); the Monmouth County Prosecutor's Office; Assistant Prosecutor Doyle, s/h/a Magan Dolye, of the Monmouth County Prosecutor's Office, and Judge Bette E. Uhrmacher.  (Compl., Caption & ¶¶ 2.2 - 2.5).  The following allegations are taken from the Complaint, and accepted for purposes of this screening only.  The Court has made no findings as to their veracity.

Johnson appeared at the Monmouth County Prosecutor's Office on or about December 22, 2004, when his name appeared in a newspaper in connection with a shooting in Asbury Park.  Johnson was promptly arrested by the police and charged with criminal attempt to commit murder, aggravated assault and possession of a weapon for an unlawful purpose.  Bail was set at $250,000, cash only.  He could not pay the bail, and remained incarcerated until April 6, 2006, when he allegedly was acquitted of all charges.  (Compl., ¶ 3.1).[1]

Johnson alleges that he was arrested without probable cause and falsely imprisoned by the Asbury Park Police.  He claims that MCCI (1) held him for 15 months without probable cause, and (2) failed to protect him when he was attacked by another inmate and suffered serious bodily injury.  He also alleges that Doyle pursued a false prosecution against him, knowing that there was no probable cause to prosecute, and that Judge Uhrmacher

_____

[1]  Johnson is now incarcerated due to an unrelated conviction.

2

continued his bail despite his requests for a bail reduction. (Compl., ¶¶ 5.1 - 5.9).

## II.   STANDARDS FOR SUA SPONTE DISMISSAL

A district court must (1) review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity, and (2) identify cognizable claims and sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

The Court must construe a pro se complaint liberally in the plaintiff's favor.  See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  But the Court need not credit "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting predecessor of § 1915(e)(2)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972) (cite and quotes omitted); see Erickson, 127 S.Ct. at 2200 (reviewing whether pro se prisoner complaint complied with requirements of Rule 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson, 127 S.Ct. at 2200 (cite and quotes omitted).

### III.   ANALYSIS

**A.   Immunity**

The Eleventh Amendment bars any suit by private parties against a state, its agencies and departments, and state officials in their official capacities — wherein the imposition of liability would be paid from public funds in a state treasury — from federal court, unless that immunity is waived by the state itself or federal statute. See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Edelman v. Jordan, 415 U.S. 651, 663 (1974). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979). Also, states, governmental entities that are considered arms of the state for Eleventh Amendment purposes, and state officers sued in their

4

official capacities for money damages are not "persons" subject to suit within the meaning of § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 70-71 & n.10 (1989); Grabow v. S. State Corr. Fac., 726 F.Supp. 537, 538-39 (D.N.J. 1989) (New Jersey Department of Corrections not person under § 1983).

Johnson asserts an unspecified claim against the State of New Jersey and New Jersey Superior Court, Monmouth County, as to his alleged false imprisonment and prosecution.  The State of New Jersey, however, is not subject to liability for money damages here pursuant to the Eleventh Amendment.

New Jersey Superior Court and its vicinages are part of the judicial branch of the State of New Jersey, and thus protected by the Eleventh Amendment also.  See Johnson v. New Jersey, 869 F.Supp. 289, 296-98 (D.N.J. 1994); see also Hunter v. Sup. Ct. of N.J., 951 F.Supp. 1161, 1177 (D.N.J. 1996), aff'd, 118 F.3d 1575 (3d Cir. 1997).  State courts are "arms" of the state entitled to share in the state's sovereign immunity.  See Greater L.A. Council on Deafness v. Zolin, 812 F.2d 1103 (9th Cir. 1987); Harris v. Mo. Ct. of Apps., 787 F.2d 427 (8th Cir. 1986); Monroe v. Horwitch, 820 F. Supp. 682 (D. Conn. 1993), aff'd, 19 F.3d 9 (2d Cir. 1994); see also N.A.A.C.P. v. California, 511 F.Supp. 1244, 1257 (E.D. Cal. 1981) (stating judicial branch is integral part of unit referred to as sovereign state, and fact that defendant courts therein were courts of entry into state judicial

system, rather than courts of last resort, did not make them any less an integral part of judicial branch of state), aff'd, 711 F.2d 121 (9th Cir. 1983).

This Court finds that New Jersey Superior Court, and its county vicinages, are "arms" of the State of New Jersey. This Court further finds that the judicial branch is an integral part of the State of New Jersey. Accordingly, Johnson's claims against the State of New Jersey and the New Jersey Superior Court, Monmouth County, are barred by the Eleventh Amendment.

**B.   Judicial Immunity**

Judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit. See Mireless v. Waco, 502 U.S. 9, 11 (1991) (stating judicial immunity is immunity from suit, not just from assessment of damages); Stump v. Sparkman, 435 U.S. 349, 355-56 (1978) (stating judges of courts of superior or general jurisdiction not liable in civil actions for judicial acts, even when such acts exceed their jurisdiction, and are alleged to be done maliciously or corruptly). Allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity. See Forrester v. White, 484 U.S. 219, 227 (1988).

Johnson fails to assert any allegations against Judge Uhrmacher showing conduct outside of a judicial capacity. At

best, it may be inferred from the Complaint that Johnson's claim against Judge Uhrmacher involves court-related matters occurring during Johnson's state criminal proceedings, i.e., his bail hearing.  Such claim is not actionable.  There are no allegations to suggest that Judge Uhrmacher acted beyond the scope of judicial authority, or in the complete absence of all jurisdiction. Therefore, Judge Uhrmacher is absolutely immune from liability.

C.   **Prosecutorial Immunity**

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983.  Imbler v. Pachtman, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity.  Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function.  See Kalina v. Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by qualified immunity for attesting to truth of facts contained in

7

certification in support of arrest warrant, as in provision of
such testimony prosecutor functioned as complaining witness
rather than prosecutorial advocate for state); <u>Burns</u>, 500 U.S. at
492-96 (provision of legal advice to police during pretrial
investigation is protected only by qualified immunity); <u>Buckley</u>,
409 U.S. at 276-78 (prosecutor is not acting as advocate, and is
not entitled to absolute immunity, when holding press conference
or fabricating evidence); <u>see also</u> <u>Yarris v. County of Del.</u>, 465
F.3d 129 (3d Cir. 2006) (analyzing whether prosecutor is entitled
to absolute immunity for allegedly wrongful acts in connection
with prosecution, <u>e.g.</u>, holding prosecutor not entitled to
absolute immunity for deliberately destroying highly exculpatory
evidence, but entitled to immunity for deciding to deliberately
withhold exculpatory evidence before and during trial, but not
after conclusion of adversarial proceedings).

Johnson alleges no facts against the Monmouth County
Prosecutor's Office and Doyle that would fall outside the scope
of their duties in initiating and pursuing a criminal prosecution
against him.  Thus, this Court will dismiss the claims against
these defendants for failure to state a claim.

**D.   False Arrest Claim**

Johnson alleges that Asbury Park Police and Ash arrested him
without probable cause in violation of the Fourth Amendment.  A
Section 1983 claim for false arrest may be based upon the Fourth

8

Amendment right to be free from unreasonable seizures.  Albright
v. Oliver, 510 U.S. 266, 274 (1994).  "An arrest made without
probable cause creates a cause of action for false arrest under
42 U.S.C. § 1983.  In addition, where the police lack probable
cause to make an arrest, the arrestee has a claim under § 1983
for false imprisonment based on a detention pursuant to that
arrest."  O'Conner v. City of Phila., 233 Fed.Appx. 161, 164 (3d
Cir. 2007) (cites and quotes omitted); see Dowling v. City of
Phila., 855 F.2d 136, 141 (3d Cir. 1988) (false arrest is arrest
made without probable cause); Groman v. Twp. of Manalapan, 47
F.3d 628, 636 (3d Cir. 1995) (where police officer lacks probable
cause to make arrest, arrestee has Fourth Amendment claim for
false imprisonment based on detention pursuant to that arrest).
Indeed, "[f]alse arrest and false imprisonment overlap; the
former is a species of the latter."  Wallace v. Kato, 127 S.Ct.
1091, 1095 (2007).

To state a claim for false arrest, a plaintiff must allege
that (1) there was an arrest, and (2) the arrest was made without
probable cause.  Dowling, 855 F.2d at 141.  Thus, a defense to an
unlawful arrest and false imprisonment claim is that the police
officer defendants acted with probable cause.  Sharrar v. Felsing,
128 F.3d 810, 817-18 (3d Cir. 1997) (key element of § 1983
unlawful arrest claim is that police officer arrested plaintiff
without probable cause); Groman, 47 F.3d at 636 ("arrest based on

probable cause could not become the source of a [§ 1983] claim for false imprisonment"). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

A Section 1983 claim for false arrest typically accrues on the date of the plaintiff's arrest. See Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998); Rose v. Bartle, 871 F.2d 331, 348-51 (3d Cir. 1989). Johnson states that he was arrested on or about December 22, 2004, when he appeared at the Monmouth County Prosecutor's Office. An arrestee can file suit as soon as the allegedly wrongful arrest occurs; the limitations period begins to run, however, when the allegedly false imprisonment ends, that is, when the arrestee becomes held by legal process, for example, when he is bound over by a magistrate or arraigned on criminal charges. Wallace, 127 S.Ct. at 1095-96 (rejecting — where petitioner arrested and convicted based on unlawfully-obtained confession, and then charges dropped — petitioner's effort to bring false arrest claim after charges dropped, as claim for

10

false arrest and imprisonment incident thereto accrues when allegedly wrongful arrest occurs, and limitations period begins to run when that false imprisonment ends, that is, when one is held pursuant to legal process; rejecting explicitly contention that claim did not accrue until State dropped charges).

Johnson was arrested on or about December 22, 2004. Johnson does not indicate the date he was arraigned, but does assert that he had a bail hearing and requested a bail reduction. Thus, he was held pursuant to legal process, and his false imprisonment from the alleged false arrest ended, well before he was acquitted of all charges on April 6, 2006. Accordingly, Johnson's claim of false arrest accrued at the latest in February 2005 (assuming that an arraignment and bail hearing would have been conducted at most several months after plaintiff's arrest in December 2004); and therefore, Johnson had until February 2007 to file the Complaint. The Complaint is dated March 13, 2008, and was received by this Court on March 17, 2008.[2]

_____

[2] The complaint was received by the Court on March 17, 2008. Giving Johnson the benefit of all inferences related to the date he filed the complaint, the Court finds that Johnson "filed" the complaint on the date he handed it to prison officials to be mailed to the Court for filing. See Houston v. Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (incorporating "mailbox rule" for habeas petitions submitted by confined inmates). Because the Court does not know the exact date on which Johnson handed the complaint to prison officials for mailing, the Court will use the date on which Johnson signed his complaint, which was March 13, 2008.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978). Although the statute of limitations is an affirmative defense that may be waived, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim that is apparently untimely from the face of the complaint. See Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding sua sponte dismissal proper since such claim "based on an indisputably meritless legal theory"); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (applying Pino); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998); Johnstone v. United States, 980 F.Supp. 148 (E.D. Pa. 1997) (applying Pino). 28 U.S.C. § 1915A (which governs civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (which governs actions brought as to prison conditions) require that federal courts review and dismiss any complaint that fails to state a claim, and thus parallel the provision in 28 U.S.C. § 1915(e).

The limitations period for § 1983 actions is governed by the applicable state's statute of limitations for personal injury actions. See Wallace, 127 S.Ct. at 1094. Accordingly, New

12

Jersey's two-year limitations period on personal injury actions, N.J.S.A. § 2A:14-2, governs plaintiff's claims.  Under N.J.S.A. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action.

Johnson had two years from when his false arrest claim accrued, around February 2005 as stated above, to file the Complaint.  Thus, Johnson had until February 2007 to bring his false arrest and imprisonment claim.  He did not file the Complaint until March 13, 2008, more than one year after the limitations period had expired.  Thus, this claim is time-barred. Johnson alleges neither facts nor extraordinary circumstances that would permit statutory or equitable tolling.  Nor does he plead ignorance of the law or the fact of his incarceration (neither excuse being sufficient to relax the statute of limitations bar here) as the basis for delay in bringing suit. In fact, plaintiff is completely silent as to the fact that the Complaint has been submitted out of time.[3]

---

[3]  New Jersey statutes set forth certain bases for "statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly either by defective pleading or in the wrong forum. See Freeman v. State, 347 N.J.Super. 11, 31 (cites omitted),

The Court also finds that Johnson has not offered any explanation for his lack of diligence in pursuing his claim for more than one year after it had expired.  This omission militates against equitable tolling of the statute of limitations.  Thus, the Court finds that this claim is now time-barred and the claim will be dismissed with prejudice in its entirety accordingly, as against defendants, the City of Asbury Park (as to the Asbury Park Police Department) and Detective Robert Ash.

---

certif. denied, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  Id.
    When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:

    (1) where a defendant actively misleads a plaintiff with
    respect to her cause of action; (2) where the plaintiff
    has been prevented from asserting her claim as a result
    of other extraordinary circumstances; or (3) where the
    plaintiff asserts her claims in a timely manner but has
    done so in the wrong forum.

Id. n.9.
    In most cases, "the limitations period begins to run from the time when plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."  Gentry v. Resolution Tr. Corp., 937 F.2d 899, 919 (3d Cir. 1991); see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994)(claim accrues as soon as injured party "knew or had reason to know of the injury that constitutes the basis of this action").  "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong."  Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996).

14

**E.    Failure to Protect Claim**

Johnson alleges that MCCI and Monmouth County failed to protect him while he was confined.[4]  He alleges that another inmate attacked and injured him.  He does not provide the date he was allegedly assaulted, but the incident had to have occurred before April 6, 2006, when he was acquitted of the charges against him and released.

Johnson was a pretrial detainee confined at MCCI when the incident occurred.  Pretrial detainees retain liberty interests grounded in the Due Process Clause of the Fourteenth Amendment. See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000). Whether such a detainee has been deprived of liberty without due process is determined by the standards set out in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it

---

[4]  The claim asserted against MCCI is subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability.  See Grabow, 726 F.Supp. at 538-39.  Accordingly, the Complaint will be dismissed in its entirety against MCCI, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...
>
> A court must decide whether the disability is
> imposed for the purpose of punishment or whether it is
> but an incident of some other legitimate governmental
> purpose.  Absent a showing of an expressed intent to
> punish on the part of detention facility officials, that
> determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]."  Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment."  Conversely, if a restriction or
> condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees qua
> detainees.  ...

441 U.S. at 535-39 (cites omitted).  Also, the government has

legitimate interests that stem from its need to maintain security

and order at the detention facility.  "Restraints that are

reasonably related to the institution's interest in maintaining

jail security do not, without more, constitute unconstitutional

punishment, even if they are discomforting and are restrictions

that the detainee would not have experienced had he been released

while awaiting trial."  Id. at 540.  Retribution and deterrence,

however, are not legitimate nonpunitive governmental objectives.

Id. at 539 n.20.  Nor are grossly exaggerated responses to

genuine security considerations.  Id. at 539 n.20, 561-62.

Johnson alleges that defendants "allow[ed] an attack [by

another inmate] against his person which caused serious bodily

16

injury." (Compl., at ¶ 5.6). He does not allege that the other inmate posed a known risk of harm, or that he advised defendants of his fear of attack or need to be secured from any danger posed by the inmate. Thus, proving that the assault by another inmate was foreseeable, or MCCI's staff willfully ignored threats to his safety, will be difficult. But these issues are fact questions that are not susceptible to summary dismissal, or a motion to dismiss on the pleadings. Johnson may be able to prove on these facts that defendants knew of and disregarded an excessive risk to his safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).[5] "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.[6]

_____

[5] Eighth Amendment analysis provides the floor in determining the standard to be considered as to detainees. To successfully state a claim for an Eighth Amendment violation, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation that was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

[6] Where defendants merely fail to exercise due care in failing to prevent harm to an inmate, such negligence is insufficient to establish an Eighth Amendment violation. See Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Schwartz v.

Based on Johnson's allegations, the Court is constrained to allow this claim to proceed at this time.  This claim may be subject to dismissal as time-barred if the assault occurred before March 13, 2006.

## F.    Malicious Prosecution

Johnson alleges a claim of malicious prosecution in violation of the Fourth Amendment as against defendants Asbury Park Police and Ash (Compl., at ¶ 5.1), which may be actionable under § 1983, if he can show that (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, (4) the criminal proceeding was terminated favorably to the plaintiff, and (5) the plaintiff suffered deprivations of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).

Johnson has alleged facts sufficient to state a prima facie case of malicious prosecution.  He alleges that the state court criminal proceeding was terminated in his favor because he was acquitted of all charges on April 6, 2006.  He also shows that he was confined for 15 months due to the alleged malicious

---

County of Montgomery, 843 F.Supp. 962 (E.D. Pa.), aff'd, 37 F.3d 1488 (3d Cir. 1994).

18

prosecution.  Accordingly, this Court is constrained to allow this claim of malicious prosecution proceed at this time.[7]

### IV.  CONCLUSION

The Complaint will be allowed to proceed in part.  Johnson's Fourth Amendment malicious prosecution claim asserted against the defendants City of Asbury Park (and the Asbury Park Police) and Detective Robert Ash, and his claim that defendant Monmouth County failed to protect him from harm while confined, will be allowed to proceed at this time.  All other claims and the remaining defendants, the State of New Jersey, New Jersey Superior Court, Monmouth County, the Monmouth County Prosecutor's Office, Assistant Prosecutor Doyle, and Judge Uhrmacher, will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1) and (2).  The Court will issue an appropriate order.

        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:  September 29, 2008

---

[7]  This malicious prosecution claim would not be time-barred because such a claim does not accrue until the criminal proceeding was terminated in his favor, i.e., April 6, 2006.  The Complaint was filed on March 13, 2008, less than a month before the statute of limitations expired on April 6, 2008.